<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ABDUL OUTLAW,<br><br>Defendant. | Case No. 2:21-cr-00382 (BRM)<br><br>**OPINION**<br>**TEMPORARILY FILED UNDER SEAL** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Abdul Outlaw's ("Defendant") Motion to Suppress any evidence obtained from a search by police on December 31, 2020. (ECF No. 22.) The United States of America (the "Government") filed an Opposition. (ECF No. 23.) Defendant filed a Reply. (ECF No. 25.) Following an evidentiary hearing, Defendant filed a supplemental brief in further support of his Motion (ECF No. 50), and the Government filed a supplemental brief in opposition to Defendant's Motion (ECF No. 49). Having reviewed the parties' submissions filed in connection with Defendant's Motion and having held an evidentiary hearing on November 7, 2023 (the "Hearing"), for the reasons set forth below and for good cause having been shown, Defendant's Motion to Suppress (ECF No. 22) is **GRANTED**.

**I.    BACKGROUND**

**A.  Factual Background**

On May 5, 2021, a grand jury returned an Indictment against Defendant, charging him with one count of possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). (ECF No. 1.) The indictment alleges Defendant, on December 31, 2020, "knowing that he had previously been convicted of at least one crime punishable by a term of imprisonment

exceeding one year, did knowingly possess in and affecting interstate commerce a firearm" in violation of 18 U.S.C. § 922(g)(1). (*Id.* at 1.) Defendant pleaded not guilty to the one count in the Indictment. (ECF No. 12.)

Based on the parties' submissions filed in connection with Defendant's Motion and the testimony from Detective Marc Castro[1] and evidence presented at the Hearing, the Court finds the following facts leading up to the Defendant's arrest preceding the Indictment. (*See generally* Ex. 1[2]; ECF Nos. 22, 23, 25, 44, 49, 50.) In or around December 2020, Lieutenant Anthony Venancio instructed certain Newark Police Department officers to conduct intelligence gathering in Newark's fifth precinct due to a recent influx of narcotics activity and gun violence. (Ex. 1 at 1.) Four officers—Detectives Castro, Resendes, Macieira, and Johnson (the "Officers")—were deployed to Newark's fifth precinct in response to this instruction. (*Id.* at 1–2.) On December 31, 2020, Detectives Castro and Resendes were patrolling together in an unmarked police car in Newark's fifth precinct, traveling west on Van Vechten Street with the windows down.[3] (*Id.* at 2; ECF No. 44 at 6–9.) Traveling behind Detectives Castro and Resendes were Detectives Macieira

---

[1] Detective Castro was the Government's sole witness at the Hearing. (*See* ECF No. 44 (Tr. of Nov. 7, 2023 Evidentiary Hr'g).)

[2] "Ex. 1" refers to Exhibit 1, a Newark police incident report dated December 31, 2020, listing the reporting officer as Detective Marc Castro, which Defendant submitted to the Court under seal in connection with his Motion. The Government filed the same police report as an unsealed attachment (titled "GX-1") to its Opposition to Defendant's Motion. (*See* ECF 23 at 9–12.) For ease of reference, the Court will refer to this December 31, 2020 Newark police report as "Ex. 1" herein.

[3] Detective Castro testified that it was his and his partner Detective Resendes's practice to patrol with the windows open (or, at a minimum, cracked, even if it was cold and/or raining) so they could be aware of their surroundings including sounds and smells, but said this was not standard operating procedure and they were not trained to do this. (ECF No. 44 at 37–41; *see also* Ex. 1 at 2.)

and Johnson who were also patrolling together in an unmarked police car in Newark's 5th precinct on December 31, 2020. (*Id.*)

At around 6:15 PM, Detective Castro, who was sitting in the passenger seat, observed a parked grey Audi Q7 with dark tinted windows, its taillights on, and its sunroof partially open.[4] (Ex. 1 at 1–2; ECF No. 44 at 9–12, 46.) Detective Castro observed the Audi had "very dark after[-]market tints on the windows including the windshield" and testified he smelled burning marijuana[5] and observed smoke emanating from the Audi.[6] (Ex. 1 at 2; *see also* ECF No. 44 at 11–15, 65.) Detective Castro then radioed Detectives Macieira and Johnson to activate their lights and sirens to conduct a stop of the vehicle. (Ex. 1 at 2; ECF No. 44 at 13.) Detective Castro approached the driver's side of the vehicle and encountered Defendant who was sitting in the driver's seat. (Ex. 1 at 2.) Defendant rolled down the driver's side window,[7] and Detective Castro noted "the aroma of burning marijuana grew extremely pungent while smoke was exiting the driver side window." (*Id.*) Detective Castro asked Defendant for his license, registration, and proof of insurance and asked Defendant to step out of the vehicle due to the smell of marijuana. (Ex. 1 at

---

[4] At the Hearing, Detective Castro initially testified that nothing important or material was missing from the police report and he did not believe he left anything out of the report, but he later testified that after re-reading the report, he remembered the car was running at the time of motor vehicle stop and he must have forgotten to include that fact in the report. (ECF No. 44 at 29–32.)

[5] At the Hearing, Detective Castro testified that he knew it was the smell of marijuana based on his "training and experience in numerous narcotics arrests, investigations," and "hundreds" of encounters involving marijuana or other controlled dangerous substance. (ECF No. 44 at 12.)

[6] Detective Castro authored the police report and was the Government's sole witness at the Hearing (*see* ECF No. 44 at 26–29; Ex. 1); therefore, it is unknown whether any of the other three officers on the scene (Detectives Resendes, Macieira, and Johnson) also smelled burning marijuana and/or observed smoke emanating from the Audi at the time of the motor vehicle stop involving Defendant on December 31, 2020.

[7] At the Hearing, Detective Castro testified he did not recall whether he asked Defendant to roll down the window and that Defendant may have done so voluntarily. (ECF No. 44 at 48.)

2.) Defendant was respectful and cooperative and complied with all of Detective Castro's requests; he provided his license, registration, and insurance card, and he exited the vehicle. (*Id.*; ECF No. 44 at 14–15, 48–55, 69.) Also, Defendant did not make any sudden or furtive movements throughout the encounter with the Officers, and his hands were in plain view the entire time. (ECF No. 44 at 47–55.)

After Defendant exited the vehicle, but prior to placing Defendant under arrest, Detective Castro conducted a pat-down of Defendant and felt what he thought to be a gun in Defendant's waistband and immediately shouted the Newark police code for gun to the other officers. (Ex. 1 at 2; ECF No. 44 at 16–18, 52–55.) Detective Resendes then placed Defendant under arrest and Detective Castro retrieved the gun from Defendant's waistband, which was contained inside of a purple Crown Royal whiskey pouch. (Ex. 1 at 2; ECF No. 44 at 17.) Detective Castro then conducted a search incident to arrest during which he found Defendant was also in possession of a prescription bottle containing approximately 3.6 grams of raw marijuana.[8] (Ex. 1 at 2; ECF No. 44 at 57–58.) The Officers also searched the Audi but found no illegal contraband or weapons. (Ex. 1 at 2; ECF No. 44 at 20, 61–64.)

Defendant was issued motor vehicle summonses for the illegally tinted windows, in violation of N.J. Stat. Ann. § 39:3-75, and for possessing a controlled dangerous substance (marijuana) in a motor vehicle, in violation of N.J. Stat. Ann. § 39:4-49.1. (Ex. 1 at 2; ECF No. 44 at 771.) Defendant was also charged with possession of marijuana and unlawful possession of a firearm in violation of N.J. Stat. Ann. §§ 2C:39-7B(1), 39-5B, 39-3D, 35-10A(4). (Ex. 1 at 3; ECF No. 44 at 70–71.)

---

[8] Detective Castro testified that this raw marijuana recovered during the search incident to arrest was *not* the marijuana he smelled. (*See* ECF No. 44 at 57.)

### B. Procedural History

On April 27, 2022, Defendant filed a Motion to Suppress any evidence—*i.e.*, a gun and a prescription bottle containing approximately 3.6 grams of raw marijuana—obtained from an alleged unlawful search by police on December 31, 2020. (ECF No. 22.) On June 2, 2022, the Government filed an Opposition to Defendant's Motion. (ECF No. 23.) On June 15, 2022, Defendant filed a Reply in further support of his Motion. (ECF No. 25.)  On November 7, 2023, the Court held an evidentiary hearing on Defendant's Motion. (ECF Nos. 43, 44.) With the Court's permission, on February 27, 2024, the Government filed a supplemental brief in opposition to Defendant's Motion (ECF No. 49), and on March 21, 2024, Defendant filed a supplemental brief in further support of his Motion (ECF No. 50).

## II.   LEGAL STANDARD

"A defendant may move to suppress evidence in the court where trial will occur, as [Federal] Rule [of Criminal Procedure] 12 provides." Fed. R. Crim. P. 41(h). Federal Rule of Criminal Procedure 12 provides motions to suppress evidence must be made prior to trial. Fed. R. Crim. P. 12(b)(3)(C). "Initially, the burden of proof is on the defendant who seeks to suppress evidence." *United States v. Wimbush*, No. 19-00134, 2020 WL 1873020, at *6 (D.N.J. Apr. 15, 2020) (citing *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995)). "However, once the defendant has established a basis for his motion, *i.e.*, the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable." *Johnson*, 63 F.3d at 245. "To sustain a warrantless search or seizure, the government must prove by a preponderance of the evidence that 'each individual act constituting a search or seizure under the Fourth Amendment was reasonable.'" *Wimbush*, 2020 WL 1873020, at *6 (quoting *United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005)).

The exclusionary rule is "a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *United States v. Davis*, 564 U.S. 229, 231–32 (2011). "The Fourth Amendment protects the right to be free from 'unreasonable searches and seizures.'" *United States v. Beatty*, 437 F. App'x 185, 187 (3d Cir. 2011) (quoting U.S. Const. amend. IV). The Fourth Amendment's proscription of unreasonable searches and seizures "usually requires the police to have probable cause or a warrant before making an arrest." *Herring v. United States*, 555 U.S. 135, 136 (2009). Unless the investigation provides the officer with probable cause for further search of the detainee's person or vehicle, or probable cause for arrest, the detainee must be released. *Berkemer v. McCarty*, 468 U.S. 420, 439–40 (1984). "The probable cause inquiry is 'commonsense,' 'practical,' and 'nontechnical;' it is based on the totality of the circumstances and is judged by the standard of 'reasonable and prudent men.'" *United States v. Lackey*, No. 20-2977, 2022 WL 313807, at *2 (3d Cir. Feb. 2, 2022) (quoting *United States v. Donahue*, 764 F.3d 293, 301 (3d Cir. 2014)). "Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

## III.    DECISION

Defendant argues both the motor vehicle stop and the subsequent pat-down of his person were unlawful because the Officers did not have articulable reasonable suspicion to justify conducting the motor vehicle stop and likewise lacked the necessary reasonable suspicion to conduct the subsequent seizure and pat-down of his person; therefore, Defendant contends the Court must suppress the evidence seized as fruits of the unlawful search. (ECF Nos. 22, 25, 50.)

The Government submits Defendant's Motion should be denied because (1) the motor vehicle stop was lawful, due to the smell of burnt marijuana and the Audi's tinted windows in

violation of New Jersey law; and (2) the subsequent pat-down of Defendant was lawful and justified because the Officers (i) had not just reasonable suspicion, but probable cause to arrest Defendant for illegally possessing marijuana and could search him for that offense, even if it preceded his formal arrest, and, alternatively, (ii) had an objective basis to believe Defendant could be armed, under the totality of the circumstances, and therefore were permitted to conduct a pat-down as a safety measure. (ECF Nos. 23, 49.)

The Court first addresses whether the motor vehicle stop involving Defendant was lawful and then addresses whether the subsequent pat-down of Defendant was lawful.

### A.    The Court Finds the Motor Vehicle Stop Involving Defendant Was Lawful

Defendant argues the motor vehicle stop was unreasonable under the Fourth Amendment because the Officers did not have sufficient reasonable suspicion of criminal activity to conduct the stop.[9] (ECF No. 50 at 3–5.) Defendant contends Detective Castro's belief that the tinted windows of the Audi were in violation of the New Jersey Motor Vehicle Code was a mistake of law because: (1) Detective Castro testified that he was able to see the two occupants of the Audi as he approached the vehicle, and (2) the relevant statute requires the vehicle to be driven, not just merely operated, and it is undisputed the Audi here was stationary and not moving. (*Id.*) Defendant further submits Detective Castro's testimony regarding smelling burnt marijuana "did not give him an articulable reasonable suspicion to seize the Defendant, much less probable cause to arrest him" because "there was no evidence developed in the record to substantiate [his] observations of recently smoked marijuana." (*Id.* at 5.)

---

[9] While Defendant makes this argument in his supplemental filing (ECF No. 50) following the Hearing, his earlier filings in support of his Motion did not appear to contest the legality of the motor vehicle stop and instead focused on the alleged unlawful pat-down (*see* ECF Nos. 22, 25).

The Government argues the motor vehicle stop involving Defendant was lawful because the Officers had reasonable suspicion to conduct the stop based on burnt marijuana emanating from the Audi and observing the Audi's tinted windows in violation of N.J. Stat. Ann. § 39:3-75. (ECF No. 23 at 3 (citation omitted).) The Government asserts "such stops are justified when officers 'have "reasonable suspicion" to believe that a traffic law has been broken,'" and because "[h]aving a dark window tint is a technical violation" of a New Jersey law, the "officers had reasonable suspicion that '"either the vehicle or an occupant" has violated the law'" and therefore had authority to conduct the motor vehicle stop on that basis. (*Id.* (citations omitted).)

"A traffic stop is a 'seizure' within the meaning of the Fourth Amendment, 'even though the purpose of the stop is limited and the resulting detention quite brief.'" *United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). "Police officers may initiate a traffic stop when they 'possess[] specific, articulable facts that an individual was violating a traffic law at the time of the stop.'" *United States v. Cherisme*, 854 F. App'x 447, 448 (3d Cir. 2021) (alteration in original) (quoting *Delfin-Colina*, 464 F.3d at 398). "[A]ny technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime." *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) (citing *Whren v. United States*, 517 U.S. 806 (1996)). "When one peruses the traffic-stop suppression caselaw, one is struck by how rarely a traffic stop is found to have been illegal." *Mosley*, 454 F.3d at 252.

A traffic stop of a vehicle requires only reasonable suspicion of criminal activity, rather than probable cause. *See Berkemer*, 468 U.S. at 439 (citing *Terry v. Ohio*, 392 U.S. 1, 29 (1968)).[10]

---

[10] *See also Delfin-Colina*, 464 F.3d at 396–97 ("At the outset, we must address the question whether reasonable suspicion or the higher standard of probable cause is required to support an investigatory traffic stop under the Fourth Amendment. . . . Because an ordinary traffic stop is

"Reasonable, articulable suspicion is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence,' and only a 'minimal level of objective justification' is necessary for a *Terry* stop." *Delfin-Colina*, 464 F.3d at 396 (citations omitted). The test for reasonable suspicion is an objective one—"[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810. *See also Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) ("Reasonableness, of course, depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law [enforcement] officers.'" (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975))). "A classic reasonable-suspicion basis for a traffic stop, though not the only one, is the officer's observation of speeding or some other traffic violation." *United States v. Hubbard*, No. 20-507, 2023 WL 2344661, at *4 (D.N.J. Mar. 3, 2023). Where a traffic stop is not supported by reasonable suspicion, any evidence obtained as a result of the stop must be suppressed, absent some other exception. *United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012) (citing *United States v. Johnson*, 592 F.3d 442, 447 (3d Cir. 2010)).

However, "[a] traffic stop that is lawful at its inception 'can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket. *United States v. Williams*, No. 21-408, 2022 WL 5169817, at *6 (W.D. Pa. Oct. 5, 2022) (quoting

---

analogous to an investigative detention, it has been historically reviewed under the investigatory detention framework first articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). Under *Terry* and subsequent cases, 'an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.' Reasonable, articulable suspicion is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence,' and only a "minimal level of objective justification" is necessary for a *Terry* stop. . . . [W]e now join our sister circuits in holding that the *Terry* reasonable suspicion standard applies to routine traffic stops." (citations omitted)).

*Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). "A traffic stop is unreasonably extended when an officer, without reasonable suspicion, diverts from a stop's traffic-based purpose to investigate other crimes." *Id.* (citing *Rodriguez v. United States*, 575 U.S. 348, 354–55 (2015)). "However, an officer may 'expand the scope of a traffic stop and detain the vehicle and its occupants for further investigation if [the officer] "develops a reasonable, articulable suspicion of criminal activity."'" *Id.* (quoting *United States v. Frierson*, 611 F. App'x 82, 85 (3d Cir. 2015)). The Supreme Court has "specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile." *Mimms*, 434 U.S. at 110 ("According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile. . . . Indeed, it appears 'that a significant percentage of murders of police officers occurs when the officers are making traffic stops.'" (citations omitted)). "[A] policeman who lacks probable cause but whose 'observations lead him reasonably to suspect' that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to 'investigate the circumstances that provoke suspicion.'" *Berkemer*, 468 U.S. at 439 (quoting *Brignoni-Ponce*, 422 U.S. at 881).

Here, the Court finds the motor vehicle stop involving Defendant was lawful because the evidence establishes Detective Castro observed the Audi's windows and windshield to be unlawfully tinted in violation of N.J. Stat. Ann. § 39:3-75 and smelled burning marijuana purportedly emanating from the Audi in violation of N.J. Stat. Ann. § 39:4-49.1. (Ex. 1 at 2 ("Upon approaching the side of the vehicle I detected the aroma of burning marijuana emanating from the [] Audi and observed the Audi to be equipped with very dark after[-]market tints on the windows including the windshield."); ECF No. 44 at 10–15, 46, 59, 65–71 (Detective Castro testifying he observed the Audi had "heavy aftermarket tints" and, upon approaching the vehicle, smelled

burning marijuana and observed smoke emanating from the vehicle).) Therefore, Detective Castro "possess[ed] specific, articulable facts that [Defendant] was violating a traffic law at the time of the stop." *See Cherisme*, 854 F. App'x at 448 (citation omitted). Because "*any* technical violation of a traffic code legitimizes a stop" (*Mosley*, 454 F.3d at 252 (emphasis added)), and both unlawfully tinted windows and possession of marijuana in a motor vehicle are each separate technical violations of the New Jersey Motor Vehicle Code (*see* N.J. Stat. Ann. §§ 39:3-75, 39:4-49.1), or at least were at the time of the stop, the Officers had reasonable suspicion to believe Defendant violated either or both of these laws in December 2020 and thus had an objective and legitimate reason to conduct the motor vehicle stop.[11] *See, e.g.*, *United States v. Augustus*, 590 F. Supp. 3d 767, 775–76 (E.D. Pa. 2022) (finding officers had reasonable suspicion to conduct a motor vehicle stop involving the defendant where the officers "had reasonable suspicion to believe that [the defendant] violated a traffic ordinance" based on the vehicle's "heavily tinted" windows in violation of state law; and noting as unavailing the defendant's argument that the officers "lacked reasonable suspicion because they did not measure the tint on his window to see if it constituted an unlawful amount of tint—nor did they discern whether the tinted windows were installed by the manufacturer or whether he had a medical exemption at the time of the stop").

The Court concludes the motor vehicle stop involving Defendant was lawful and accordingly denies Defendant's Motion to Suppress on this basis.

---

[11] *See Wimbush*, 2020 WL 1873020, at *16 n.22 ("This finding holds true regardless of whether the initial justification for the stop was to investigate potential narcotics possession, or a motor vehicle stop to investigate the [vehicle's] tinted windows. Even assuming, *arguendo*, that the stop of the vehicle was only justifiable as a motor vehicle stop meant to investigate the vehicle's heavily tinted windows, the officers quickly developed probable cause to investigate potential narcotics activity once the officers smelled the odor of marijuana emanating from the vehicle, and thus the officers were not limited to investigating 'the ordinary inquiries incident to' a traffic stop." (quoting *Rodriguez v. United States*, 575 U.S. 348, 355 (2015))).

**B.      The Court Finds the Pat-Down of Defendant Was Unlawful**

Defendant argues the pat-down of him was unlawful because the Officers did not have individualized reasonable suspicion to believe he was "armed and dangerous," and therefore the Court must suppress the evidence obtained from this unlawful search. (ECF No. 22; ECF No. 50 at 7–10.) Defendant contends he "did nothing to raise suspicion that he was armed" and "did nothing whatsoever to make a reasonably prudent man believe that any of the (at least) four detectives on the scene was in danger." (ECF No. 22 at 7–8.) Rather, Defendant states in his brief:

> [U]pon questioning, and throughout the stop, [he] was respectful and cooperative; he provided [Detective] Castro with all appropriate documentation; there was no suspicion that he had stolen the car; he was not under the influence; he was a complete stranger to [Detective] Castro, not suspected of any serious criminal or gang activity; he did not act erratically or aggressively; he made absolutely no suspicious movements while in the car—no movements toward a pocket, no adjustments or other furtive behavior to conceal something; he did not hesitate to get out of the car when [Detective] Castro ordered him to; and he had no suspicious bulge—even *after* getting out of the car.

(*Id.* at 7; *see also* ECF No. 25; ECF No. 50 at 1–3, 7–10.) Defendant submits the Government does not claim Defendant "was doing anything other than sitting in a tinted-windowed car in which an occupant was smoking marijuana"; the Government does not, for example, claim Defendant "suggested he was armed, or had a suspicious bulge, or made any furtive movements, or refused to remove his hand from a pocket, or was hesitant to roll his window down, or behaved aggressively or erratically in any way." (ECF No. 25 at 3 (citing Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 9.6(a) (5th ed. 2013)).) Defendant argues "[n]o court has ever held on facts as bare as the ones in this case—*i.e.*, being in a tinted-windowed car with marijuana smoke—that police had reasonable suspicion an occupant was armed and dangerous, such that a *Terry* frisk was justified under *Arizona v. Johnson*, 555 U.S. 323 (2009)."

(*Id.* at 4–5.) Accordingly, Defendant contends "[u]pholding the search in this case would set a new floor for the level of suspicion required to frisk occupants of a car." (ECF No. 22 at 7.)

Additionally, Defendant asserts the pat-down of him was also unlawful and unjustified because it "was the *basis* for arrest here, not a search incident to arrest." (ECF No. 25 at 3 (citing *Smith v. Ohio*, 494 U.S. 541, 543 (1990) ("[I]t is axiomatic that an incident search may not precede an arrest and serve as part of its justification.")).) Defendant further asserts the Officers did not have probable cause to arrest Defendant for alleged illegal possession of marijuana because there was no evidence developed in the record to substantiate Detective Castro's purported observations of smelling recently smoked marijuana, and accordingly "his testimony does not withstand a 'common sense' test of reason and logic considering the record developed at the suppression hearing." (ECF No. 50 at 5; *see also id.* at 3–10.)

The Government, however, argues the pat-down of Defendant was lawful because Detective Castro articulated he smelled marijuana and observed smoke emanating from the Audi, and based on this, he "had not just reasonable suspicion, but even probable cause, to believe that [Defendant] had committed or was committing a crime, and that he may be potentially armed and dangerous," and based on that probable cause, "Detective Castro had authority to arrest [Defendant] for illegally possessing marijuana—and, consequently, to search him for that offense." (ECF No. 23 at 5; *see also id.* at 4–7; ECF No. 49.) The Government concedes the pat-down of Defendant occurred before his formal arrest but argues this is irrelevant because the Supreme Court has held police officers can search a person whom they have probable cause to arrest, even if the search precedes the formal arrest. (ECF No. 49 at 2–4.) Alternatively, the Government contends that even if Detective Castro did not have probable cause to arrest and search Defendant, "under the totality of the circumstances, he and the other Officers had the objective

basis to think that [Defendant] could be armed and to perform a pat-down as a safety measure" because the Officers: (1) were "aware of the risks that they are taking during a traffic stop involving criminal activity"; (2) were out on patrol in a "high-crime neighborhood" in response to "a recent influx in gun violence and narcotic activity" in the area; (3) smelled and observed marijuana emanating from the Audi, indicating the "presence of drugs in [Defendant's] vehicle"; and (4) had a need to ensure their safety and the safety of others. (ECF No. 23 at 6–7.)

"Under the Fourth and Fourteenth Amendments, a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *United States v. Lockett*, 406 F.3d 207, 211 (3d Cir. 2005) (alteration in original) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). One exception to the warrant requirement is a *Terry* stop and frisk. *See generally Terry v. Ohio*, 392 U.S. 1 (1968). "Under *Terry* and subsequent cases, 'an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *Delfin-Colina*, 464 F.3d at 396 (citations omitted).

"Reasonable suspicion of criminal activity is not enough to justify a frisk, however; the officer must have reasonable suspicion that a person is 'armed and dangerous.'" *United States v. Murdock*, No. 21-2273, 2022 WL 2128562, at *1 (3d Cir. June 14, 2022) (quoting *United States v. Murray*, 821 F.3d 386, 393 (3d Cir. 2016)); *see also Arizona v. Johnson*, 555 U.S. 323, 327 (2009) ("To justify a patdown of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous."); *United States v. Mitchell*, 454 F. App'x 39, 41 (3d Cir. 2011) ("An 'officer may pat down the occupants of the vehicle and conduct a search of the passenger compartment, if he has a reasonable suspicion that

the occupants might be armed and dangerous.'" (quoting *United States v. Bonner*, 363 F.3d 213, 216 (2004))). "[T]he purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence[.]" *United States v. Savage*, 677 F. Supp. 2d 756, 762 (E.D. Pa. 2009) (citing *Adams v. Williams*, 407 U.S. 143, 146 (1972)).

"Even in high crime areas, where the possibility that any given individual is armed is significant, *Terry* requires reasonable, individualized suspicion before a frisk for weapons can be conducted." *Maryland v. Buie*, 494 U.S. 325, 334 n.2 (1990). "Reasonable suspicion is formed when, under the totality of the circumstances, the officer reasonably believed his safety was threatened." *United States v. Thach*, 411 F. App'x 485, 489 (3d Cir. 2011) (citing *Terry*, 392 U.S. at 27). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *United States v. Robertson*, 305 F.3d 164, 170–71 (3d Cir. 2002) (quoting *Terry*, 391 U.S. at 27). This inquiry is based on "the totality of the circumstances leading up to the moment of the defendant's seizure," and courts "'give considerable deference to police officers' determinations of reasonable suspicion' given 'their own experience and specialized training.'" *United States v. Graves*, 877 F.3d 494, 498–99 (3d Cir. 2017) (quoting *United States v. Brown*, 765 F.3d 278, 290 (3d Cir. 2014)). "The totality of the circumstances includes an officer's 'knowledge, experience, and common sense judgments about human behavior.'" *Thach*, 411 F. App'x at 489 (quoting *Robertson*, 305 F.3d at 167). "While an individual's presence in a high-crime area is not by itself sufficient to warrant a *Terry* stop, 'the fact that the stop occurred in a "high crime area" [is] among the relevant contextual considerations in a *Terry* analysis.'" *United States v. Valentine*, 232 F.3d 350, 356 (3d Cir. 2000) (alteration in original) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)).

For example, in *United States v. Murdock*, the Third Circuit affirmed the district court's determination that "[t]he officers had reasonable suspicion that [the defendant] was armed and dangerous" and held this reasonable suspicion supported the officer's frisk of the defendant in that case. 2022 WL 2128562, at *1. The court's conclusion was based on the following factors: (1) the traffic stop involving defendant "occurred after dark in a high-crime area"; (2) the defendant "was 'extremely nervous' and 'breathing heavily'"; (3) when asked for his license, the defendant answered he did not have it on him but then made a furtive movement with his right hand up to his right breast pocket; and (4) the officer feared the defendant "was reaching for a gun because he ha[d] seen guns hidden in pockets the size of [the defendant's]." *Id.* The court concluded these facts, taken together, "provided 'a particularized and objective basis' to conclude that [the defendant] was armed and dangerous." *Id.*

Similarly, in *United States v. Thach*, the Third Circuit affirmed the district court's determination that the officer had sufficient reasonable suspicion the defendant was armed and dangerous where (1) he "knew the occupants of the car were suspects in a drug investigation"; (2) he knew, based on his training and experience, "that guns often accompanied drugs"; (3) "the occupants' stories were inconsistent and [] none of them was authorized to drive the car"; and (4) defendant engaged in "furtive conduct during the stop suggest[ing] that he might be attempting to stash something." *Thach*, 411 F. App'x at 489. The *Thach* court concluded a reasonably prudent officer in the same circumstances "would be warranted in the belief that his safety or that of others was in danger." *Id.*

Here, it is uncontested the pat-down search of Defendant's person occurred without a warrant. Therefore, the issue is whether the Officers had sufficient justification to conduct the warrantless pat-down of Defendant. The Court finds that the Officers did not have such sufficient

justification because they did not have reasonable suspicion to believe Defendant was potentially armed and dangerous, based on a totality of the circumstances. In analyzing whether the Officers objectively had reasonable suspicion Defendant was potentially armed and dangerous at the time of the pat-down, the Court considered factors including the following: (1) the "inordinate risk" police officers face during traffic stops (*see Mimms*, 434 U.S. at 110); (2) the time and location of the stop—around 6:15 PM in the evening in a "high-crime neighborhood" in Newark (Ex. 1); (3) why the Officers were on patrol in that location—in response to "a recent influx of gun violence and narcotic activity" in that neighborhood (Ex. 1); (4) whether the Officers believed their safety and/or the safety of others was in danger—here, this does not appear to be the case as Detective Castro testified that he felt safe during the motor vehicle stop and subsequent pat-down, particularly given the presence of three of his fellow officers on scene during the entire interaction with Defendant (*see* ECF No. 44 at 28–29, 49–50); (5) the Officers' beliefs, knowledge, and understanding at the time of the interaction with Defendant; and (6) Defendant's demeanor and actions throughout his interaction with the Officers.

Regarding the Officers' beliefs, knowledge, and understanding at the time of the interaction with Defendant, Detective Castro testified that before smelling burnt marijuana, he had no suspicion the Audi in which Defendant was sitting had been involved in any criminal activity and also had no suspicion the Audi's occupants were involved in any criminal activity. (ECF No. 44 at 41–42.) Detective Castro also testified that, prior to frisking Defendant, (i) he did not know Defendant; (ii) he did not know whether Defendant had a criminal record; (iii) he did not know whether the Audi was stolen; (iv) he did not know anything about the Audi; (v) he did not receive any tip regarding Defendant or the Audi; and (vi) he did not recognize Defendant's name as someone who had a criminal record or as someone who had any gang involvement. (*See id.* at

42–64.[12]) Regarding Defendant's demeanor and actions throughout his interaction with the Officers, Detective Castro testified: (i) Defendant was cooperative, respectful, and compliant with all of his requests including producing his license, registration, and insurance card, and stepping out of the Audi; (ii) Defendant did not make any sudden or furtive movements at any time; (iii) upon exiting the vehicle, Defendant did not do anything that aroused his suspicion; (iv) Defendant did not do or say anything that would have put him in fear; (v) Defendant did not have any visible bulge anywhere; (vi) Defendant's hands were in plain view at all times; and (vii) Defendant did not give him some fishy or suspicious story, and he had no reason to believe Defendant lied to him about anything. (*See id.*[13])

Unlike the defendants in *Murdock* and *Thach*, Defendant here was not "extremely nervous" nor "breathing heavily"; he did not make any sudden or furtive movements at any time; he produced his license upon being asked for it; he did not provide any inconsistent story; and he was not a suspect in a drug investigation. Under the totality of the circumstances, the Court finds reasonably prudent officers in the same circumstances as present here would not be warranted in believing that Defendant was armed and dangerous or that their safety or that of others was in danger at the time of the pat-down of Defendant. *See Robertson*, 305 F.3d at 170–71 (quoting *Terry*, 391 U.S. at 27). Indeed, Detective Castro himself testified that he felt safe, particularly given three other officers were also present, and he also testified Defendant was cooperative,

---

[12] Detective Castro also testified that prior to frisking Defendant, he had the capacity to do a vehicle lookup but did not do so. (ECF No. 44 at 49.)

[13] Additionally, Defendant notes "he was not charged with being under the influence or operating a motor vehicle under the influence of a controlled dangerous substance" (ECF No. 50 at 3), which Detective Castro's testimony and the police report corroborate (*see* ECF No. 44 at 20, 57–61, 70–71; Ex. 1).

respectful, and compliant; Defendant did not make any sudden or furtive movements; and Defendant did not say or do anything that would have put him in fear.[14] Nothing objectively indicated Defendant was potentially "armed and dangerous" and Detective Castro subjectively did not believe his safety was threatened; without more, Defendant should not have been subjected to an unreasonable pat-down in violation of the Fourth Amendment. *See, e.g.*, *Augustus*, 590 F. Supp. 3d at 775 (granting defendant's motion to suppress in a case where defendant was in a parked, but running, vehicle that was unlawfully tinted and smelled of marijuana, finding that while the initial motor vehicle stop was lawful (based on the unlawfully tinted windows), the officers lacked reasonable suspicion that the defendant was armed and dangerous, and therefore the pat-down of defendant during the stop was unreasonable under the Fourth Amendment).

Even assuming the Officers had reasonable suspicion criminal activity was afoot—based on Detective Castro's testimony that he smelled burning marijuana and observed smoke emanating

---

[14] The Court found no indicia, in Detective Castro's body language, tone, or otherwise, that he was being anything but forthright and honest at the Hearing when providing his testimony; therefore, the Court finds Detective Castro's testimony credible. *See United States v. Howard*, 787 F. Supp. 2d 330, 331–32 (D.N.J. 2011) ("In deciding a motion to suppress evidence, a trial court must determine the credibility of witnesses. As the finder of fact, the court can accept or reject any or all of a witness's testimony. Credibility determinations 'are to be made in consideration of numerous factors, including . . . the witness's ability to accurately recollect the matters at hand [and] ultimately, the extent to which [the testimony] withstands a common sense test of reason and logic.'" (alterations in original) (citations omitted)); the Court also utilized the factors set forth in the Model Criminal Jury Instructions § 3.04 ("In deciding the question of credibility, remember to use your common sense, your good judgment, and your experience. In deciding what to believe, you may consider a number of factors: (1) The opportunity and ability of the witness to see or hear or know the things about which the witness testified; (2) The quality of the witness' knowledge, understanding, and memory; (3) The witness' appearance, behavior, and manner while testifying; (4) Whether the witness has an interest in the outcome of the case or any motive, bias, or prejudice; (5) Any relation the witness may have with a party in the case and any effect the verdict may have on the witness; (6) Whether the witness said or wrote anything before trial that was different from the witness' testimony in court; (7) Whether the witness' testimony was consistent or inconsistent with other evidence that you believe . . . ; and (8) Any other factors that bear on whether the witness should be believed.").

from the Audi, despite his other seemingly conflicting testimony[15]—that alone was insufficient to

conduct a pat-down of Defendant during a motor vehicle stop; the Officers also needed reasonable

suspicion that Defendant was armed and dangerous, which they did not have here. *See Murdock*,

2022 WL 2128562, at *1 ("Reasonable suspicion of criminal activity is not enough to justify a

frisk[.]" (quoting *Murray*, 821 F.3d at 393)); *Pittman*, 338 F. App'x at 148 ("To justify a patdown

of the driver or a passenger during a traffic stop, . . . the police must harbor reasonable suspicion

that the person subjected to the frisk is armed and dangerous." (alteration in original) (quoting

*Arizona,* 555 U.S. at 327)); *Thach*, 411 F. App'x at 489 ("Reasonable suspicion is formed when,

under the totality of the circumstances, the officer reasonably believed his safety was threatened.").

Therefore, the Court finds, based on the totality of the circumstances, the Officers did not

have reasonable suspicion to believe Defendant was armed and dangerous and thus unjustifiably

and unreasonably conducted a pat-down of Defendant in violation of the Fourth Amendment.[16]

---

[15] At the Hearing, Detective Castro testified that he smelled burning marijuana and observed smoke emanating from the Audi, but he also testified that he did not see either Defendant or the passenger smoking marijuana; he did not see them discard anything out of the Audi; he never asked if Defendant or the passenger had been smoking marijuana; neither Defendant nor the passenger showed any signs of being under the influence of marijuana; he did not smell marijuana on the Defendant's breath or clothes; he did not smell marijuana on the passenger's breath or clothes; after searching the Audi and both Defendant and the passenger, he did not find any evidence showing marijuana had been recently smoked; he did not find any paraphernalia or apparatus used to ingest marijuana; and he did not charge Defendant with driving under the influence of marijuana. (ECF No. 44 at 45–71.) Therefore, while the Court found Detective Castro to be credible, it weighed this conflicting testimony accordingly.

[16] Regarding the Government's alternative argument contending the Officers had probable cause to arrest Defendant for illegal possession of marijuana, based on Detective Castro's testimony that he smelled burnt marijuana and observed smoke emanating from the Audi, the Court finds the evidence and testimony elicited at the Hearing do not support the Government's argument on this point. The Court acknowledges that under Third Circuit precedent, "the smell of marijuana alone . . . may establish not merely reasonable suspicion, but probable cause." *United States v. Green*, 897 F.3d 173, 186 (3d Cir. 2018) (quoting *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006)). However, the Court finds it difficult to reconcile Detective Castro's testimony regarding the burnt marijuana and smoke with his somewhat contradictory testimony on this point at the Hearing (*see supra* n.15), particularly when, as noted above, it is unknown whether the other

Accordingly, the Court grants Defendant's Motion to Suppress the evidence seized as a result of that unlawful pat-down.

**IV.    CONCLUSION**

For the reasons set forth above, Defendant's Motion to Suppress (ECF No. 22) is **GRANTED**. An appropriate Order follows.


*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  May 14, 2024

---

officers (Detectives Resendes, Macieira, and Johnson) also smelled burning marijuana and/or observed smoke emanating from the vehicle. Therefore, to the extent the Government is attempting to justify the warrantless search of Defendant as a search incident to arrest that occurred prior to his formal arrest, the Court finds the Officers did not have probable cause to arrest Defendant for illegal possession of marijuana based on Detective Castro's testimony.